IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL JEROME MOSS, | * | |
| Petitioner | * | |
| v. | * | Civil Action No. GLR-23-2642 |
| STATE OF MARYLAND, | * | |
| Respondent | * | |

***

# MEMORANDUM OPINION

THIS MATTER is before the Court on self-represented Petitioner Michael Jerome Moss's Amended Petition for Writ of Habeas Corpus filed under 28 U.S.C. § 2254 and his related Motion for Hearing. (ECF Nos. 4, 11).[1] Respondent State of Maryland ("State") has filed a Limited Answer to the Petition contending that the claims asserted by Moss are procedurally defaulted or do not warrant federal habeas relief. (Answer at 10–22, ECF No. 10.).[2] For the reasons stated below, the Petition will be denied and a certificate of appealability shall not issue. Additionally, Moss's Motion for Hearing shall be denied because the Court deems a hearing unnecessary. See Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; Local Rule 105.6 (D.Md. 2023); see also Fisher v. Lee, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)).

---

[1] On October 4, 2023, the Court directed Moss to file an Amended Petition, (ECF No. 3), which he filed on November 27, 2023. (ECF No. 4) As such the Court considers this as the operative pleading in this matter.

[2] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

# I. BACKGROUND

Michael Jerome Moss is an inmate committed to the custody of the Maryland Division of Corrections and confined to the Eastern Correctional Institution in Westover, Maryland. (Am. Pet. at 7, ECF No. 4). His Petition for Writ of Habeas Corpus challenges his conviction for attempted robbery from the Circuit Court for Wicomico County, Maryland for which he is serving a fifteen-year term of incarceration. (Id. at 1).

## A.   Factual Background

On March 23, 2021, there was an attempted robbery at the Citi Trends store in Salisbury, Maryland. (Nov. 10, 2021 Tr., Maryland v. Moss, 22-CR-21-0215 ["Tr."] at 96, ECF No. 10-3.). The store's manager of eleven years, Adrian Cannon, identified Michael Moss as the person who committed the crime based on a prior interaction she had with him in the store. (Id. at 99:14–100:6–8). She testified that on March 17, 2021, Moss came into the store twice. (Id. at 100:10–24). The first time Moss came into the store he was returning items he had purchased at the store and Cannon went to the front of the store to process his return. (Id. at 101:5). She recalled that Moss handed her four or five receipts, noted that five to seven tags were not attached to the merchandise, and that the items smelled strongly of cigarettes. (Id. at 101:6–10). Cannon left the merchandise on the counter. (Id. at 191:11–12). She explained that since he was not in their system, she asked for his identification and he provided his driver's license. (Id. at 101:13–14, 102:8–10).

During this exchange, she recalled that Moss told her about the outfit he had on saying, "it was legit" and that he was not going to return it but the other items he was

returning did not fit him correctly. (Id. at 101:14–18). She gave Moss a store credit and let him go. (Id. at 101:18–20) At the time, Moss was wearing a navy blue "Born Fly" track suit. (Id. at 101:24–02:2). Later that same day, approximately fifteen minutes before closing, Moss returned to the store. (Id. at 103:1–7). Cannon testified that she was picking her car up from the shop when her Assistant Manager called her to say Moss was there trying to return the track suit. (Id. at 103:13–15). Cannon returned to the store, clocked in, and waited for him to approach the front of the store. (Id. at 103:15–16). When he came up, Cannon explained to Moss that he needed to wear a mask due to the COVID pandemic. (Id. at 103:20–21). Moss asked if Cannon had one he could buy and she recalled retrieving a "clearance bandana gator mask" for him to purchase and then engaging in a back and forth with him on the proper way to wear it for about a minute. (Id. at 103:21–04:2). When she saw that he was trying to return the sweatsuit he was wearing earlier that day she told him he could not return it because it had been worn. (Id. at 104:3–5.). He claimed to own a clothing store of his own and that he would take it back if someone returned it to his store. (Id. at 104:8–10). She recalled that the back and forth continued until she told him she wasn't going to argue and walked away. (Id. at 104:17–25). He said, "you don't know who you're effing with." (Id. at 105:1–2). Cannon replied that Moss did not know who he was dealing with either and she recalled he left the store mumbling something. (Id. at 105:2–4).

On March 23, 2021, around 9:00 p.m., Cannon and Tyisha Stewart, a sales associate who worked in the store, were in the process of closing the store. (Id. at 106:21–07–7). Cannon recalled that approximately ten minutes before closing time, while Stewart was in

the back of the store beginning to vacuum and Cannon was cleaning behind the cash register near the front of the store, a man walked into the store wearing a hood. (Id. at 107:16–19.) When Cannon greeted him, he quickened his pace and Cannon watched as he approached the back of the store where Stewart was bent down unravelling the vacuum cleaner cord. (Id. at 107:23–08:1). The man grabbed Stewart by her hair and threw her down to the floor. (Id. at 108:1–2) As Cannon came from behind the counter, the man started charging toward her and it was then she realized that this man was Michael Moss. (Id. at 108:3–5).

When Cannon asked him what he was doing, he replied with "give me the money, give me the money." (Id. at 108:5–7). Cannon responded that she was not giving him anything and told him, " . . . I know who you are." (Id. at 108:8–11). As soon as Cannon said she knew who the intruder was, he grabbed a heavy-duty stapler from the counter and threw it at Cannon before running out of the door. (Id. at 108:11–14). Cannon added that she recognized Moss's voice and recalled he was covering his face with the same gator mask she had sold him on March 17th. (Id. at 109:2–7.). Cannon called 911 and when police arrived, she told them, without any suggestion by police, that Michael Moss just tried to take the money. (See id. at 118:8–17).

Cannon also verified the surveillance video from the store depicting the attempted robbery. (Id. at 109:21–10:21). Additionally, she verified the photographic line-up on which she circled the picture of Michael Moss as the person who came into the store, threw Stewart to the ground, demanded money, threw a stapler at Cannon, and fled. (Id. at 118:19–20:2).

During cross-examination Cannon admitted she only knew Moss from her brief interaction with him in the store on March 17th and that she hesitated to identify him in the photo array. (Id. at 127:15–28:9). Cannon explained that during both of her interactions with Moss he was "bug-eyed . . . [l]ike he was on something, sweating and everything." (Id. at 128:12–15). When viewing the photo-array, Cannon remarked that the photo of Moss did not depict his eyes the same way she recalled them. (Id. at 128:17–25). Defense counsel played the body camera footage from the police officer's camera who conducted the photo identification for the jury. (See id. at 130:23–31:25, 134–35). The portion of the video footage played for the jury was admitted into evidence. (Id. at 133:25–34:12). Cannon explained that her hesitancy was due to her concern that she was identifying the right person. (Id. at 135:7–8).

In addition to Cannon's testimony, the State put on testimony from Stewart who confirmed that she was assaulted from behind when Moss grabbed her by the hair and threw her to ground. (Id. at 142:10–13). She testified that as a result of the assault she sustained an injury to her left arm and was later diagnosed with a sprained wrist. (Id. at 143:6–18). In addition, she generally confirmed the sequence of events as recounted by Cannon. (See id. at 141:13–44:10). Stewart was not in the store on March 17th and therefore had not seen Moss on that occasion. (Id. at 145:9–11). She was unable to select Moss's picture from the photographic line-up. (Id. at 145:19–21).

Officer Zachary Douglas of the Fruitland Police Department was the final witness for the State. He testified that he was the first responding officer to the 911 call placed by Cannon and that he arrived at the Citi Trends Store at 8:51 p.m. (Id. at 147:21–48:3).

5

Officer Douglas confirmed that the first thing Cannon said to him was that Michael Moss had assaulted her employee. (Id. at 148:15–18). Additionally, he described the photographic line-up procedure; and recalled that Stewart declined medical attention even though she was attempting to wrap her arm with an ace bandage. (Id. at 152:8–54:20).

On cross-examination, Officer Douglas confirmed that he did not know whether any officers canvassed the area where the crime occurred. (Id. at 155:19–20). He also confirmed that the scene was not processed for fingerprints or DNA. (Id. at 156:4–23). On redirect, Officer Douglas explained that where numerous people have touched an item, fingerprint processing and DNA collection does not provide any useful information in terms of identifying a single possible perpetrator. (Id. at 157:19–23).

At the end of the State's evidence, defense counsel moved for a judgment of acquittal. (Id. at 159:24–160:20). The Court granted the motion on the count of carrying a dangerous weapon openly with intent to injure but denied the motion as to the attempted robbery count. (Id. at 164:2–4, 10–11).

The jury returned a guilty verdict on the remaining four counts of attempted robbery, second-degree assault on Adrian Cannon, second-degree assault on Tyisha Stewart, and trespass on private property. (Id. at 222:5–16). Moss consented to sentencing the same day of the verdict and the trial court imposed a term of fifteen years for the attempted robbery; ten years consecutive for the second-degree assault on Adrian Cannon; and imposed no further sentences for the second-degree assault on Tyisha Stewart, finding it merged, nor for the trespass because the State did not seek a sentence for it. (Id. at 245:16–46:7).

B. **Direct Appeal**

In his direct appeal, Moss raised one claim: that the second-degree assault on Adrian Cannon should merge with the attempted robbery count. (State R. at 39–58, ECF No. 10). The State did not contend otherwise. (Id. at 66–78). The Court of Special Appeals, now the Appellate Court of Maryland, issued a per curiam opinion dated June 1, 2022, which stated in pertinent part that:

> In Maryland, the crime of assault encapsulates the common law crimes of: (1) an attempted battery; (2) a consummated battery; and (3) placing the victim in fear of an immediate battery. Watts v. State, 457 Md. 419, 435 (2018), Snowden v. State, 321 Md. 612, 617 (1991).
>
> It is therefore clear that, when based on the same criminal act or acts, second-degree assault merges, under the required evidence test, into robbery because only one offense (robbery) requires proof of a fact which the other (second-degree assault) does not. Gerald v. State, 299 Md. 138, 140 (1984). The same rule applies to assault and attempted robbery. See Morris v. State, 192 Md. App. 1, 44 (2010).

(Id. at 88). The ten-year consecutive sentence imposed for second degree assault was vacated with instructions to amend the commitment record and docket entries consistent with the opinion. (Id.). The mandate issued on June 1, 2022. (Id. at 90).

C. **Post-Conviction**

In his post-conviction petition Moss alleged that trial counsel rendered ineffective assistance of counsel by: withdrawing motions that he requested counsel file and argue; insufficiently using peremptory strikes during jury selection; and insufficiently challenging the State's evidence against Moss. (State R. at 133). Moss additionally alleged that the trial court was unduly prejudicial against him by minimizing purportedly exculpatory video

7

evidence. (Id. at 134). After a hearing on January 5, 2023, the trial court denied Moss's request for post-conviction relief. (See generally, Post-Conviction Tr., ECF No. 10-4; State R. at 129–39).[3]

On April 5, 2023, Moss filed an Application for Leave to Appeal the denial of post-conviction relief. (State R. at 140–44). The application was summarily denied by the Appellate Court of Maryland on June 29, 2023. (Id. at 145–47). Moss filed a Motion to Reopen Post-Conviction proceedings on August 28, 2023 (id. at 148–51) but failed to serve the State's Attorney, so the motion was stricken on October 20, 2023 (id. at 152).

**D.    Federal Petition**

In his Amended Petition for Writ of Habeas Corpus, Moss asserts that the State had insufficient evidence to support his conviction because the entire case was based on "lack of I.D." and Moss complains that the evidence used was unreliable hearsay that was not depicted on the surveillance video. (Am. Pet. at 1–3, ECF No. 4). Moss's second claim is that Cannon was an impeached witness, because she made up a story that Moss was banned from the store and said his eyes looked different from the eyes depicted in the photo used in the array. (Id. at 3–4). His third claim is that the trial judge exhibited judicial bias when he told the jury not to look at the video evidence, but to focus on the witnesses' testimonies instead. (Id. at 4.). In his fourth claim, Moss asserts his trial attorney was ineffective because she was supposed to file a motion to get the charges dismissed prior to trial due to a "lack of I.D." (Id. at 9).

---

[3] The content of the post-conviction court's decision is discussed in more detail infra as it relates to the claims raised to this Court.

The State asserts that the Petition should be dismissed because Moss's first claim is unexhausted and procedurally defaulted and even if the merits were reviewed the claim is meritless. (Answer at 30–36). The State further argues that the remaining claims, which were reviewed by the State post-conviction court, survive scrutiny under the applicable standard of review. (Id. at 36–47).

## II.     DISCUSSION

### A.     Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute sets forth a "highly deferential standard for evaluating state-court rulings." Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997); see also Bell v. Cone, 543 U.S. 447, 455 (2005). The standard is "difficult to meet" and requires courts to give state-court decisions the benefit of the doubt. Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted); see also White v Woodall, 572 U.S. 415, 419–20 (2014) (finding that a state prisoner must show that the state court ruling on the claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011))).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination

9

of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000) (citation omitted).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." Id. (quoting Williams, 529 U.S. at 410).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010) (citing Williams, 529 U.S. at 411). Thus, "even if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. Id. (internal quotation marks and citation omitted). Similarly, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." Renico v. Lett, 559 U.S 766, 773 (2010) (quoting Williams, 529 U.S. at 411).

The habeas statute provides that "a determination of a factual issue made by a state court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." Id. (quoting Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003)).

**B.    Procedural Default**

As noted, the State asserts that Moss's first claim is unexhausted and procedurally defaulted. (Answer at 30–36). Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether by failing to raise the claim in post-conviction proceedings, on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. See Coleman v. Thompson, 501 U.S. 722, 749–50 (1991) (failure to note timely appeal); Murray v. Carrier, 477 U.S. 478, 489–91 (1986) (failure to raise claim on direct appeal); Murch v. Mottram, 409 U.S. 41, 46–47 (1972) (failure to raise claim during post-conviction); Bradley v. Davis, 551 F.Supp. 479, 481 (D.Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default may also occur where a state court declines to consider the merits of a claim based on an adequate and independent state procedural rule. Yeatts v. Angelone, 166 F.3d 255, 260 (4th Cir. 1999).

11

As the Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. See Coleman, 501 U.S. at 731–32. A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Id. at 735 n.1.

Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show: (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, i.e., the conviction of one who is actually innocent.[4] See Murray, 477 U.S. at 495–96; Breard, 134 F.3d at 620. Cause consists of some objective factor external to the defense that impeded counsel's efforts to raise the claim in state court at the appropriate time. Breard, 134 F.3d at 620 (quoting Murray, 477

---

[4] Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. See Murray, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Id.; see also Reid v. True, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of new evidence. See Buckner v. Polk, 453 F.3d 195, 199–200 (4th Cir. 2006) (citation omitted). Here, Moss has presented no new evidence that would lead to such a conclusion.

U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. See Schlup v. Delo, 513 U S. 298, 314 (1995).

Moss never raised a sufficiency of evidence claim on direct appeal of his conviction or in his post-conviction proceedings and under applicable Maryland law, he may not now do so. Moss was entitled to a single appeal to the Appellate Court of Maryland and a single petition for discretionary review by the Supreme Court of Maryland for appellate review of his verdict. See Md. Code Ann., Cts. & Jud. Proc. §§ 12-301, 307 and 308. On direct appeal, Moss raised one claim that concerned merger of his second-degree assault conviction and did not argue anything about the sufficiency of the evidence presented by the State to convict him. (See State R. at 39–58). He may not go back and raise such a claim now.

Furthermore, Moss did not raise a sufficiency of the evidence claim in his post-conviction petition and he is not entitled to file a second such petition under Maryland law. See Md. Code Ann., Crim. Proc. § 7-103(a) (limiting post-conviction review to one). If Moss were permitted to reopen post-conviction proceedings "in the interests of justice," see id. at § 7-104, he would be subject to the presumption that he knowingly waived this allegation because he did not raise it in his first petition. Id. §§ 7-102, 106(b) (waiver provisions). Thus, Moss has no remaining State corrective process to raise this claim and it is procedurally defaulted.

Even if this claim were not procedurally defaulted it fails on its merits. The jury had the ability to view the available video surveillance, including the body camera footage depicting Cannon's hesitancy in choosing Moss's picture from the photo line-up, and they were free to believe Cannon's testimony identifying Moss as the perpetrator. Under well-established law, the determination of the credibility of each witness is within the sole province of the jury and is not susceptible to review. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989); Pigford v. United States, 518 F.2d 831, 836 (4th Cir. 1975). Accordingly, the Court finds that federal habeas review is denied as to Moss's first claim.

### C. Ineffective Assistance of Counsel

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984); accord Buck v. Davis, 580 U.S. 100, 118 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in Strickland, 466 U.S. at 687–88. See Williams, 529 U.S. at 390. That test requires the petitioner to show that: (a) his counsel's performance was deficient; and (b) he was prejudiced by the deficient performance. Strickland, 466 U.S. at 687; accord Buck, 589 U.S. at 118.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." Strickland, 466 U.S. at 688; accord Harrington, 562 U.S. at 104. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at

14

88 (quoting Strickland, 466 U.S. at 690). The "first prong sets a high bar." Buck, 589 U.S. at 118. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" Id. (quoting Strickland, 466 U.S. at 690). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." Id. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; accord Buck, 580 U.S. at 119. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. Strickland, 466 U.S. at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. Id. at 693. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." Berghuis v. Thompkins, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in Strickland, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697. Nor must a court address both components if one is dispositive. Jones v. Clarke, 783 F.3d 987, 991–92 (4th Cir. 2015) (citing Strickland, 466 U.S. at 697). Because either prong is fatal to a petitioner's claim, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

1. Failure to Impeach Witness

Moss appears to claim that his trial attorney rendered ineffective assistance of counsel when she failed to impeach Adrian Cannon's identification testimony at trial. (Am. Pet. at 9). Moss raised a similar claim in his post-conviction petition. (See State R. at 102–05). The post-conviction court noted that Cannon's credibility was crucial and that she had disclosed to the investigating officer on body camera that she had previously instructed a coworker to make up a story that corporate had forbidden Moss from returning to the store. (Id. at 137). Trial counsel conceded at the post-conviction hearing that she was not sure whether her failure to cross Cannon on this point was negligence or strategy. (Id.). The post-conviction court noted that while cross-examination on this topic may have been helpful, "[n]either perfection nor freedom of error is demanded" of trial counsel." (Id.) (quoting Carter v. State, 534 A.2d 1015, 1016 (Md.Spec.App. 1988)). The court went on to note that trial counsel nonetheless sufficiently raised and challenged the issue of identification on a variety of facts:

> [T]rial counsel examined Cannon on a variety of facts and assertion that would undermine her identification of Petitioner. Trial counsel examined Cannon on the fact that Petitioner was clothed in a hoodie and mask; that Petitioner's back was facing Cannon as he entered the store; that Petitioner was only present in the store for about thirty (30) seconds; that Cannon admitted she had to examine camera footage to ascertain what had occurred because of the brief length of the interaction; that Cannon and Petitioner had no previous interactions other than those at Citi Trends and therefore Cannon was not familiar with Petitioner; that Cannon had hesitated in identifying Petitioner in the photo array lineup; and that Cannon had previously stated that she did not recognize Petitioner because "his eyes [wer]en't big enough." Trial counsel also admitted into evidence and published the portion of the body camera footage in which Cannon identified Petitioner from the photo array, accentuating to the jury Cannon's statements regarding Petitioner's "deer[-]in[-]headlights eyes" and how his eyes in the photo array lineup were not "bug enough." Because trial counsel's performance was not constitutionally deficient, Petitioner's allegation of error here is DENIED.

(Id. at 138). The post-conviction court's analysis is a reasonable application of the clearly established federal law found in Strickland and does not warrant federal habeas relief. As a result, the petition is denied on this claim.

    2.    <u>Failure to file Pre-Trial Motions</u>

Moss claims his trial attorney rendered ineffective assistance of counsel when she declined to file motions to get all of the charges dismissed since there was a "lack of I.D." (Am. Pet. at 9). On this claim, the post-conviction court found that Moss failed to demonstrate the prejudice required for an ineffective assistance of counsel claim. (State R. at 135). Specifically, the court noted that Moss had not shown that such a motion would have had a "reasonable probability of changing the verdict (or the disposition of the case generally)" and also observed that the "record reflects that there was adequate

identification of [Moss] . . . such that a motion to dismiss based on lack of identification would be frivolous." (Id.). An ineffective assistance of counsel claim cannot be premised on a failure to file a frivolous motion. See Horne v. Peyton, 356 F.2d 631, 633 (4th Cir. 1966) (fact that counsel could have done more is insufficient for reversal absent any showing of harmful consequences). The post-conviction court went on to note that counsel correctly observed that "any ability of Petitioner to challenge identification was vitiated by the fact that Cannon was able to identify Petitioner in the photo array lineup without being prompted by the police." (State R. at 135). Because the post-conviction court's analysis is without error, federal habeas relief must be denied on this claim.

D.     **Judicial Bias**

The issue of judicial bias concerns whether the asserted action by the trial judge rendered the trial fundamentally unfair. Gaskins v. McKellar, 916 F.2d 941 (4th Cir. 1990); see also United States v. Morrow, 925 F. 2d 779, 781 (4th Cir. 1991). Here, Moss claims that the trial judge "instructed the jury to not pay attention to any body camera footage shown and only pay attention to statements made by Cannon and that the body camera footage was played at an insufficiently low volume such that [the] jury could not hear the audio portions . . . to adequately impeach Cannon." (State R. at 139). The post-conviction court founds these claims to be "entirely unsupported by the record." (Id.). Review of the entire transcript, including the jury instructions, establishes that the post-conviction court's characterization of this claim as unsupported by the record is without error. Accordingly, federal habeas relief is denied on this claim.

E.      **Certificate of Appealability**

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see Buck, 580 U.S. at 115. Moss "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a Certificate of Appealability shall be denied. See 28 U.S.C.§ 2253(c)(2). Moss may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. See Lyons v. Lee, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one). Accordingly, for all the foregoing reasons, Moss's Amended Petition will be denied, and the Clerk will be directed to close this case. A separate Order follows.

Entered this 6th day of June 2025.

/s/
George L. Russell, III
Chief United States District Judge